# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| LARRY J. KING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO.: 1:10-CV-385-TLS |
| | ) |
| CITY OF BUTLER, INDIANA, BUTLER | ) |
| POLICE OFFICER NICK A. MURRAY, | ) |
| AND BUTLER POLICE SERGEANT | ) |
| RANDALL DUHAMEL, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

This matter is before the Court on Motion for Summary Judgment [ECF No. 23] filed on October 26, 2011, by the Defendants, the City of Butler, Indiana, Butler Police Officer Nick A. Murray, and Butler Police Sergeant Randall Duhamel. The Defendants seek summary judgment on all claims brought by the Plaintiff, Larry J. King. The Plaintiff filed this action on November 4, 2010, alleging the following counts: Count I – 42 U.S.C. § 1983 False Arrest; Count II – 42 U.S.C. § 1983 Unlawful Search; Count III – Malicious Prosecution; Count IV – False Imprisonment; Count V – Intentional Infliction of Emotional Distress; and Count VI – State Law Claims Against Defendant City. The Plaintiff filed a Response [ECF No. 31] to the Defendant's Motion for Summary Judgment on December 19, 2011. In his Response the Plaintiff states that he has "no objection to defendants' motion to dismiss the counts of the complaint alleging state law claims, excessive force, and illegal search." (Pl.'s Resp., ECF No. 31.) The Court will grant summary judgment on Counts II, III, IV, V, and VI on the basis of the Plaintiff's statement waiving response on these claims. Therefore, only Count I, the Plaintiff's claim for false arrest

brought pursuant to § 1983, remains in dispute between the parties. For the reasons stated below, the Court will also grant the Defendant's Motion for Summary Judgment on Count I.

**FACTUAL BACKGROUND**

On October 11, 2009, the Plaintiff was driving from Chicago, Illinois, to Cleveland, Ohio. He was traveling on the toll road through Northern Indiana, and took a detour that led him to Route 6 through Butler, Indiana. The Defendant testified that as he approached Butler on Route 6, he was traveling between 30 and 35 miles per hour, and that his cruise control was not set because his speed was too slow for the cruise control to work. The Plaintiff noticed that he was being followed by a police car with activated flashing lights and siren. He pulled over onto a side street and remained in his car. Defendant Nick A. Murray then approached the car and requested the Plaintiff's driver's license. The Plaintiff could not locate his driver's license at the time because it had fallen under his seat, where he found it after his release. He gave Defendant Murray a valid U.S. passport as identification along with proof of insurance for the car. The Plaintiff explained to Defendant Murray that he just purchased the car and was waiting to receive registration for it in the mail. The Plaintiff testified that Defendant Murray did not tell him he was pulled over for speeding and that when Defendant Murray approached his car he rolled his window down completely. He also testified that he gave Defendant Murray the information contained on his Tennessee driver's license including name, address, date of birth, and social security number.

Defendant Murray testified that on October 11, 2009, he was traveling westbound on Route 6 when he saw the Plaintiff's car traveling eastbound approaching Butler. He testified that

he used a radar gun to determine the Plaintiff's speed and found that he was traveling over the speed limit. He then observed that the window tint on the car was "very dark." He also stated in his report that he saw that the car's license was improperly displayed but did not recall during his deposition what about the display was improper. (Murray Dep. 17, ECF No. 23-2.) In his report prepared on October 12, 2009, Defendant Murray wrote that the Plaintiff was given a citation for "False and Fictitious license plates, improper display of his license plate, 53 mph in a 45 mile per hour zone, 45 mph in a 35 mph zone, and 61 mph in a 55 [mile] per hour zone." (Police Report 3, ECF No. 23-4.) Defendant Murray testified that when he approached the Plaintiff's car he could not see into the car because of the dark window tint and because the Plaintiff did not immediately roll down his window, instead, Defendant Murray knocked on the driver's side window and then the Plaintiff rolled the window all the way down. Defendant Murray testified that he asked for the Plaintiff's driver's license but the Plaintiff could not produce it and instead gave a passport indicating that he lived in Tennessee. The Plaintiff told Defendant Murray he did not have the vehicle registration but showed paperwork indicating the he had purchased the car. Defendant Murray testified that he believed the Plaintiff was being evasive as to his license and personal identification. Defendant Murray sought assistance from Defendant Randall Duhamel[1], then a sergeant of the Butler Police Department. Defendant Duhamel, after being briefed at the scene by Defendant Murray, approached the Plaintiff's car and asked him questions about his

---

[1] Defendant Duhamel's name is spelled Duhamel on the docket, the Complaint, and the Defendant's Amended Answer. His name is spelled "Duhamell" in the Defendants' Motion for Summary Judgment, Memorandum in Support of the Motion, and Reply Brief in Support of the Motion. It is spelled "Duhammel" on his deposition. Because the Defendants have not sought to correct the caption and have submitted this deposition into evidence without an indication that it requires correction or which spelling is correct the Court will continue to use the spelling Duhamel.

driver's license. Defendant Duhamel testified that the Plaintiff held a map over his face and did not immediately respond to questioning. (Duhamel Dep.14, ECF No. 30-2.) The Plaintiff argued, and his testimony appears to support, that he was immediately responsive to questioning by Defendants Murray and Duhamel.

Defendant Murray testified that he contacted dispatch to run the Plaintiff's information. Dispatch told Defendant Murray that the Plaintiff had suspended licenses in both Tennessee and Indiana. Defendant Murray testified at deposition that dispatch also told him that the Plaintiff had a prior conviction for operating a vehicle with a suspended license but he did not recall the state of that conviction. Defendant Murray also learned the license plate on the Defendant's car matched a white Oldsmobile rather than the black Toyota he was driving. The Plaintiff admits the he had previously owned an Oldsmobile and had temporarily moved the plates from his previous car to the recently purchased Toyota. (Pl.'s Dep. 25–27, ECF No. 30-1.) After discussing the information received from dispatch and from the Plaintiff, Defendants Duhamel and Murray decided to arrest the Plaintiff.

## LEGAL STANDARD

Summary judgment is appropriate if the facts supported by materials in the record show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. The motion should be granted so long as no rational fact finder could return a verdict in favor of the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead

to determine whether there is a genuine issue of triable fact. *Id.* at 249–50; *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* N.D. Ind. L.R. 56-1(a) (stating that the movant must provide a "Statement of Material Facts" identifying the facts that the moving party contends are not genuinely disputed). In response, the nonmoving party cannot rest on bare pleadings alone but must use the evidentiary tools listed in Rule 56 to designate specific material facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000); *see also* N.D. Ind. L.R. 56-1(b) (directing that a response in opposition to a motion for summary judgment "must include a section labeled 'Statement of Genuine Disputes' that identifies the material facts that the party contends are genuinely disputed so as to make a trial necessary").

Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, the court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *see Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). A material fact must be outcome determinative under the governing law. *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008). "Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute." *Id*.

## ANALYSIS

"Probable cause is an absolute bar to a § 1983 claim for false arrest." *McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009). "Police ordinarily have probable cause if, at the time of the arrest, the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Smith v. Gomez,* 550 F.3d 613, 618 (7th Cir. 2008) (quotation marks and ellipsis omitted) (quoting *Wagner v. Washington Cnty.*, 493 F.3d 833, 836 (7th Cir. 2007)) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)).

The Defendants argues that there was probable cause for the arrest of the Plaintiff and that summary judgment should be granted in their favor on this basis. The Plaintiff argues that he has established a genuine issue of fact whether the officers had probable cause to arrest him in two ways. First, he argues that "[t]here is a triable issue of fact as to whether Defendants Murray and Duhamel were actually informed by 'dispatch' that [the Plaintiff] had a prior conviction for driving while his license was suspended." (Pl.'s Mem. Opp'n Summ. J. 6, ECF No. 30.) Second, he argues that "[t]here is a triable issue of fact as to whether [D]efendant Murray had a reasonable suspicion sufficient to warrant his stop of [the Plaintiff's] car." (*Id.* 7.)

The Plaintiff asserts that discrepancies between Defendant Murray's police report and his and Defendant Duhamel's deposition testimony create material issues of fact with regard to the information Defendant Murray received from dispatch. In his report Defendant Murray wrote:

> I returned to my vehicle and requested Sgt. Duhamell to the scene of my traffic stop. I then ran [the Plaintiff's] information and they informed me that he was suspended out of Tennessee and Indiana. Dispatch also stated that he has held a license in other

6

> states such as North Dakota.
>
> Sgt. Duhamell arrived and after speaking with me and dispatch informed me that we had enough probable cause to believe that [the Plaintiff] has had a previous conviction of driving while suspended. Sgt. Duhamell then told me to take [the Plaintiff] to the jail and charge him with driving while being suspended.

(Police Report 3, ECF No. 23-4.) In his deposition Defendant Murray stated that dispatch also informed him that the Plaintiff had a "prior conviction for operating while suspended." (Murray Dep. 22, ECF No. 23-2.) But Defendant Murray testified that he did not remember the state of this alleged conviction. (*Id*.) Defendant Duhamel testified that he could not remember if he spoke to dispatch himself or not. (Duhamel Dep. 20, ECF No. 30-2.)

The Plaintiff focuses on the distinction between a driving on a suspended license and driving with a prior conviction for driving while suspended. The Plaintiff argues, without citation to any case law or Indiana statute, but with the agreement of Defendant Murray[2], that driving on a suspended license is not an arrestable offense while driving on a suspended license with a prior conviction for the same is an arrestable offense. However, "[t]he Supreme Court has held that if an arrest is otherwise reasonable, the fact that it is not for an 'arrestable' offense does not make it unconstitutional." *Thomas v. City of Peoria*, 580 F.3d 633, 637 (7th Cir. 2009) (citing *Virginia v. Moore*, 128 S. Ct. 1598, 1606–07 (2008)).

Viewing Defendant Murray's and Duhamel's testimony in the light most favorable to the Plaintiff, he has, at most, raised a question of fact as to whether dispatch told Defendant Murray or Duhamel that the Plaintiff had a prior conviction for driving while suspended. Similarly

---

[2] Defendant Murray testified in his deposition on this matter: "Q: And, let me get this clear, operating–operating a car while you don't have driving privileges, even without a prior conviction, is that a misdemeanor, in your view, or not? A: It's not an incarcerable offense. We don't arrest . . . for that." (Murray Dep. 24.)

7

viewing the testimony of himself and of Defendants Murray and Duhamel in the light most favorable to the Plaintiff he has raised a question of fact as to whether he gave his answers when questioned about his license and registration in a forthright manner as he testified or in an evasive manner as Defendants Murray and Duhamel testified. Viewing these disputed facts in his favor, the Plaintiff still fails to raise an issue of material fact with regard to whether probable cause existed to arrest him. Defendants Murray and Duhamel reasonably believed that the Plaintiff had licenses suspended in two states based on the information given to them at the time. *See United States v. Mounts*, 248 F.3d 712, 715 (7th Cir. 2001) ("[P]olice officers are entitled to rely on the reasonable information relayed to them from a police dispatcher."). It is undisputed that the Plaintiff failed to provide the Defendants with either the registration for the car he was driving or his driver's license. Similarly undisputed by the Plaintiff, Defendant Murray learned from dispatch at the time that the license plate on the car the Plaintiff was driving did not match that car, but was registered to a different automobile in the Plaintiff's name. By failing to contradict this substantial evidence supporting the belief in the mind of a reasonable police officer that the Plaintiff had committed or was committing a crime, the Plaintiff has failed to submit evidence upon which a reasonable jury could conclude that Defendant Murray and Defendant Duhamel did not reasonably believe that they had probable cause to arrest him.

The Plaintiff next argues that Defendant Murray did not have probable cause supporting the initial traffic stop that led to his arrest on the above grounds. "[T]he decision to stop an automobile is reasonable when the police have probable cause to believe that a traffic violation has occurred." *United States v. Muriel*, 418 F.3d 720, 724 (7th Cir. 2005) (citing *Whren v. United States*, 517 U.S. 806, 810 (1996)). "Probable cause exists when 'the circumstances confronting a

8

police officer support the reasonable belief that a driver has committed even a minor traffic offense.'" *Muriel*, 418 F.3d 720, 724 (quoting *United States v. Cashman*, 216 F.3d 582, 586 (7th Cir. 2000)).[3]

The Plaintiff testified that he was not speeding, but rather traveling between 30 and 35 miles per hour when he was pulled over by Defendant Murray. Defendant Murray testified that he measured the Plaintiff's speed using a radar gun and that he observed the Plaintiff exceed the speed limit in three different speed limit zones. Defendant Murray also submitted his nearly contemporaneously prepared police report documenting particular speeds at which the Plaintiff exceeded the speed limit. While the Court must avoid "the temptation to decide which party's version of the facts is more likely true," *Payne*, 337 F.3d at 770, the Court must also determine whether, when the non-moving party asserts that a material factual dispute exists, the non-moving party has put forward evidence sufficient for a reasonable juror to find in his favor. At trial, the Plaintiff would carry the burden of showing that the Defendants did not have probable cause.

The Defendants argue that whether or not the Plaintiff was speeding is not material to whether Defendant Murray had probable cause to pull him over for speeding. Rather, the Defendant argues that Defendant Murray's reasonable belief that the Plaintiff was speeding is

---

[3] Although the Plaintiff argues the officers did not have even reasonable suspicion for the stop, the Defendants argue their case on the basis that they met the higher standard of probable cause. (Def.'s Reply 5–6, ECF No. 33.) Because the Defendants put forward a higher burden on themselves the Court evaluates the evidence using this standard and notes that if Defendant Murray can show that he met the higher standard of probable cause for the stop then he would necessarily have met the lower standard of reasonable suspicion. *See Jewett v. Anders*, 521 F.3d 818, 823 (7th Cir. 2008) ("Reasonable suspicion is more than a hunch but less than probable cause.").

undisputed. The Court finds, however, that Defendant Murray's testimony concerning his own belief as to the Defendant's speed cannot end the analysis of probable cause for the stop. If the Plaintiff had some evidence showing that he drove below the speed limit, at all relevant times, or submitted some other evidence calling into question Defendant Murray's testimony then he could establish a question of material fact for trial on whether Defendant Murray reasonably believed that he was speeding.

The Plaintiff first relies on his own testimony as to his speed to contradict Defendant Murray's testimony. However, his testimony does not materially contradict Defendant Murray's testimony because each testified to the Plaintiff's speed at different points in time. The Plaintiff testified:

> Q: At some point, you must have noticed there was a police car, right?
> A: Yes. The car sped up on me and the sirens and lights flashed behind me. There were some cars in front of me. Before that into Butler, I noticed there were cars in front of me and I was going about the same rate at [sic] them, and then I noticed the police car came, sped up on me and then turned on its flashers and pulled me over.
> Q: How long was that police car behind you, if you know, before they turned the flashing lights on?
> A: They turned on the flashing lights probably less than half a minute before he stopped me.
> Q: But was the flashing lights what caught your attention, or did you see him come up in your mirror?
> A: Well, he tooted the horn or sirens.
> Q: Okay, so that was what first alerted you that there was a police officer behind you, correct?
> A: Yes.
> Q: And how fast were you going at that point?
> A: Between 30 and 35.

(Pl.'s Dep. 29–30, ECF No. 30-1.) The Plaintiff testified only to his speed moments before he was pulled over. He testified that he was traveling between 30 and 35 miles per hour and below the speed limit at essentially the same time that he became aware that Defendant Murray had

10

activated his lights and siren to pull him over. Defendant Murray, for his part, testified to the Plaintiff's speed before that time, as he testified that he tracked the Plaintiff through three speed zones. Because the Plaintiff only accounts for how fast he was going when he first noticed that there was a police car behind him, which was not until Defendant Murray activated his car's lights and siren, his testimony does not contradict Defendant Murray's testimony.

The Plaintiff also attempts to cast doubt more generally on Defendant Murray's testimony but fails to submit evidence upon which a reasonable jury could conclude that Defendant Murray's testimony is untrue. The Plaintiff testified that Defendant Murray did not tell him that he had pulled the Plaintiff over for speeding. The Court views no inference a jury could draw from this fact alone to indicate that Defendant Murray did not tell the truth in either his report or his deposition. This is true particularly because the Plaintiff has submitted, beyond this testimony, no evidence indicating that Defendant Murray held some particular bias or reason to invent a pretext for stopping him. The Plaintiff does not even argue that Defendant Murray acted on the basis of some ill motive. The Plaintiff, therefore, provides no basis for a finding that Defendant Murray manufactured his documentation of the speed at which the Plaintiff was traveling or that he lied later when he testified that he saw the Plaintiff speeding and used a radar gun to determine his speed.

In two recent opinions, district courts in this Circuit denied summary judgment to a defendant police officer where a plaintiff argued that there was no probable cause or reasonable suspicion to support a stop. In *Hopkins v. O'Brien*, passengers and the driver of a car pulled over by a Chicago police officer sued under § 1983. *Hopkins v. O'Brien,* No. 09 C 6877, 2011 WL 4585233 (N.D. Ill. Sept. 30, 2011). The officer stated that he had probable cause for the initial

11

stop because he observed the plaintiffs were speeding and the car had windows tinted in violation of the Chicago Municipal Code. *Id*. at *5. The Court denied summary judgment because the plaintiffs "den[ied] they were speeding, and although one testified that [the driver's] window was rolled up when [the officer] stopped the car and approached [the driver], a reasonable jury could believe those other witnesses who insisted that the windows were rolled down and that [the officer] could not have determined that they were tinted before he stopped them." *Id*. The plaintiffs in *Hopkins* alleged that the officer made racial slurs against them and "threatened to charge them with driving under the influence of alcohol, warning them that it would be Plaintiffs' word against his and that fighting a DUI charge would cost $10,000." *Id*. at *3–4. The officer made no police report of the stop. *Id.* at *3.

In *Washington v. Kein*, a plaintiff sued a police officer under § 1983 alleging that the officer pulled him over based on his race. *Washington v. Kein*, No. 07 C 698, 2009 WL 763751, * 3–4 (N.D. Ill. March 18, 2009). The officer testified that he had probable cause for the stop based on the "weathered" look of the car's temporary license plates and his running a check, once behind the car, finding that the plates were expired and did not match the car driven by the plaintiff. *Id*. at *3. The court denied the defendant's motion for summary judgment because "it is unclear whether [the officer] had sufficient time to take the actions he claims he did regarding a determination of the improper use of the temporary plates before stopping Plaintiff" as the plaintiff had alleged it was not plausible that the officer could have taken the actions he testified to in the time period he described. *Id*. Additionally, the defendant officer in *Washington* admitted that temporary plates on the car were not in fact "weathered" or expired. *Id*.

The Court finds these two cases instructive on the type of evidence that could create a

12

material issue of fact on the issue of whether a police officer sued for false arrest under § 1983 lacked probable cause or reasonable suspicion for a stop. Unlike the plaintiffs in *Hopkins* and *Washington*, the Plaintiff in this case made no allegation of racial or other bias on the part of Defendant Murray. Nor did the Plaintiff, as did the plaintiffs in *Hopkins*, present evidence of particular misconduct on the part of Defendant Murray followed by a failure to create a police report, or evidence that Defendant Murray's version of events was somehow implausible or even unlikely, as did the plaintiff in *Washington*. Instead, the Plaintiff argues that he has created an issue of material fact through the submission of testimony as to his own memory of his speed at the moment before he was pulled over as against Defendant Murray's testimony regarding his speed through three different speed zone limits. There is no basis in the record for a finding by a reasonable jury that Defendant Murray's testimony is untrue, as it has not been materially contradicted by the Plaintiff's testimony and has not been otherwise called into question.

Because the Court will rule in favor of the Defendants on the grounds described above it need not reach the defense of qualified immunity raised by the Defendants.

## CONCLUSION

For the reasons stated above, the Court GRANTS the Defendant's Motion for Summary Judgment [ECF No. 23]. The Court ORDERS the Clerk to ENTER JUDGMENT in favor the Defendants and against the Plaintiff.

SO ORDERED on April 3, 2012.

s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT